

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

MARLON CANADY,

     Petitioner,

v.                                        Civil Action No. 3:15CV263

JEFFREY B. KISER,

     Respondent.

### MEMORANDUM OPINION

Marlon Canady, a Virginia state prisoner, proceeding pro se, brings this petition pursuant to 28 U.S.C. § 2254 ("§ 2254 Petition," ECF No. 1). Respondent moves to dismiss on the ground that the one-year statute of limitations governing federal habeas petitions bars the § 2254 Petition. Canady responds that, inter alia, his actual innocence allows him to avoid the statute of limitations. See McQuiggin v. Perkins, 133 S. Ct. 1924, 1928 (2013) ("[A]ctual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar . . . [or] expiration of the statute of limitations.") For the reasons set forth below, the Court rejects Canady's assertion of actual innocence and grants the Motion to Dismiss (ECF No. 16).

### I.   EVIDENCE AT TRIAL

On December 13, 2004, the Circuit Court for the City of Williamsburg (hereinafter, "Circuit Court"), in a bench trial,

tried Canady on ten counts of aggravated sexual battery and ten counts of rape with respect to Canady's extended molestation of his daughter. (Dec. 13, 2004 Tr. 13.)

It is appropriate here to summarize the evidence presented at trial to provide context to Canady's claims and the frivolous nature of his assertions of innocence. Specifically, over the last decade, Canady has gathered scraps of miscellaneous information that he contends reflect that his convictions were the product of a vast conspiracy involving his wife, social workers, teachers, and the prosecutor. Canady's contentions are entirely unpersuasive.

Canady's abuse of his daughter, Marissa,[1] came to the attention of the authorities when Marissa dropped a note in school. Specifically, Lois Wine, a teacher at Norge Elementary School, testified that on May 12, 2004, the school was conducting retesting of "any fourth graders that had not passed the language arts or math section of the third-grade" standard of learning test ("SOL"). (Dec. 13, 2004 Tr. 21-23.) Because Marissa did not need to retake the third-grade SOL tests, she was temporarily placed in Ms. Wine's classroom. (Dec. 13, 2004 Tr. 22-23.) After the testing, a student brought Ms. Wine a note that had been dropped on the floor at the back of Ms.

---

[1] Marissa died from cancer on October 5, 2008. (Ex. 37(A), at 1.)

2

Wine's classroom.    (Dec. 13, 2004 Tr. 23.)    In the note, Marissa wrote about some things that her father was doing to her that made her feel sad.  (Dec. 13, 2004 Tr. 29-31.)[2]  Discovery of the note led to social workers going to the school to talk to Marissa.  (Dec. 13, 2004 Tr. 100.)

Marissa testified that when she was in the first grade her father began "messing with" her.    (Dec. 13, 2004 Tr. 31.)[3] Initially, while they were in the living room, Canady would have his daughter reach under his clothes and touch his penis.  (Dec. 13, 2004 Tr. 32.)    Sometime later, Canady began calling his daughter to the bedroom and would touch her vaginal area.  (Dec. 13, 2004 Tr. 33.)

After Marissa entered the second or third grade, Canady "would stick his penis in [her] vaginical [sic] areas."  (Dec. 13, 2004 Tr. 33-34.)  Marissa said it was painful and caused her to bleed.  (Dec. 13, 2004 Tr. 34.)    Additionally, Canady also would make Marissa rub his penis until he ejaculated.  (Dec. 13, 2004 Tr. 35-36.)  Marissa testified that, since she was in the

---

[2] The prosecution's witnesses discussed the note, but the note was not admitted into evidence.  (See Dec. 13, 2004 Tr. 2.)

[3] At the time of the trial, Marissa was ten years old and in the fifth grade.  (Dec. 13, 2004 Tr. 28.)

second or third grade, Canady would place his penis in her vagina one or two times a week.[4]   (Dec. 13, 2004 Tr. 59.)

Marissa also testified that, about a year or so into the abuse, she left a note for her mother, Annette Canady, stating that her father was messing with her vaginal area.   (Dec. 13, 2004 Tr. 36-37.)   Annette testified and confirmed receiving the note.   (Dec. 13, 2004 Tr. 65-66.)

Dr. Michelle Clayton, a forensic pediatrician, testified that she examined Marissa in June of 2004.   (Dec. 13, 2004 Tr. 82-83.)   Dr. Clayton testified that Marissa had sustained injuries to her hymen that were consistent with penile penetration.   (Dec. 13, 2004 Tr. 83-85.)

Diane Smith, a social worker, talked to Canady after the allegations of abuse arose.   (Dec. 13, 2004 Tr. 100-03.)   Canady admitted to Smith that he had touched Marissa's breasts, buttocks, and vagina.   (Dec. 13, 2004 Tr. 103-04.)   He also indicated that he had Marissa touch his chest, thighs, and penis.   (Dec. 13, 2004 Tr. 103-04.)

Canady acknowledged that he had "the absolute right to testify in his defense," but declined to testify.   (Dec. 13, 2004 Tr. 113).

---

[4] When "Social Services" initially came to talk to her, Marissa acknowledged that she had not been forthcoming about the fact that Canady "was putting his penis in [her] vagina. (Dec. 13, 2004 Tr. 37.)   Marissa reasonably explained, "It was hard to talk about at first."   (Dec. 13, 2004 Tr. 38.)

4

The Circuit Court found Canady guilty of one count of rape and ten counts of aggravated sexual battery. (ECF No. 18-1, at 1.)

Canady filed a Motion to Reopen, which the Circuit Court granted and allowed Canady to present additional witnesses. (Sept. 6, 2005 Tr. 3.) Canady called his wife, Annette Canady, who admitted that, in 1995, she had lied to the police in order to have Canady incarcerated. (Sept. 6, 2005 Tr. 4-6.) Annette further admitted that she had told her pastor, Pastor Whitehead, that she had lied to the police regarding Canady's conduct. (Sept. 6, 2005 Tr. 6-7.) Pastor Whitehead, when called to testify, admitted that Canady and Annette had come to speak with him years ago. (Sept. 6, 2005 Tr. 10-11.) At that meeting Annette confirmed that "she had lied and [it] had precipitated [Canady] to be put in jail . . . . Not for this offense, for another offense . . . that happened years ago." (Sept. 6, 2005 Tr. 11.)

The Circuit Court denied Canady's motion for acquittal. (Sept. 6, 2005 Tr. 16-17.) The Circuit Court observed that Marissa "was one of the most credible witnesses for her age that [he] had heard in 19 years." (Sept. 6, 2005 Tr. 16.)

On September 9, 2005, the Circuit Court entered final judgment with respect to Canady's crimes and sentenced Canady to

an active term of imprisonment of forty (40) years. (ECF No. 18-1, at 2.)

Canady appealed. On September 22, 2006, the Supreme Court of Virginia refused Canady's petition for appeal. (ECF No. 18-4, at 1.)

On September 24, 2007, Canady filed a petition for a writ of habeas corpus with the Supreme Court of Virginia. (ECF No. 18-5, at 1.) On October 6, 2008, the Supreme Court of Virginia dismissed Canady's petition for a writ of habeas corpus. (ECF No. 18-6, at 36.)

Also in 2008, in response to his Freedom of Information Act (FOIA) request, on February 29, 2008, the James City County Department of Social Services provided Canady with a copy of the Child Protective Services Investigation record regarding the May 2004 report that Canady had sexually abused Marissa. (See Exs. 18, 18(A).)

On December 12, 2011, Canady filed a Motion to Vacate with the Circuit Court. Motion to Vacate at 1, Canady v. Commonwealth, No. 14066-00 through 14066-10 (Va. Cir. Ct. Dec. 12, 2011). On December 19, 2011, the Circuit Court denied the Motion to Vacate. Canady v. Commonwealth, No. 14066-00 through 14066-10, at 1 (Va. Cir. Ct. Dec. 12, 2011). Canady appealed. On July 16, 2012, the Supreme Court of Virginia refused Canady's petition for appeal. (ECF No. 18-7, at 1.) On November 8,

2012, the Supreme Court of Virginia refused Canady's petition for rehearing.  (ECF No. 18-8, at 1.)

On April 18, 2014, the Williamsburg-James City County Public Schools provided Canady a response to his FOIA request regarding SOL testing in the schools on May 12, 2004.  (See Ex. 25.)

On April 17, 2015, Canady filed his present § 2254 Petition.  (§ 2254 Pet. 15.)[5]  In his § 2254 Petition, Canady contends he is entitled to relief upon the following grounds:

Claim One        Canady's rights were violated because he received "multiple sentences for [a] single offense . . . ."  (Id. at 6.)

Claim Two        "Petitioner was tried and sentenced on defective indictments that did not charge an offense . . . ."  (Id. at 7.)

Claim Three      The "trial judge constructively denied Petitioner effective assistance of counsel at every critical stage of the proceedings."  (Id. at 9.)

Claim Four       "Petitioner was legally incompetent at the . . . time of his state trial . . . ."  (Id. at 11.)

Claim Five       "Outrageous governmental misconduct, the knowing use of false manufactured evidence and perjured testimony."  (ECF No. 1-1 at 61.)

---

[5] The Court deems the petition filed on the date Canady swears he placed the petition in the prison mailing system. Houston v. Lack, 487 U.S. 266, 276 (1988).  The Court corrects the capitalization, punctuation, and spelling in the quotations from Canady's submissions.

(a) Canady's ex-wife, Annette Canady manipulated Marissa into giving false evidence against Canady. (Id. at 63.)

(b) "The Commonwealth Attorney withheld, and ignored exculpatory evidence which it knew, or had reason to know that . . . (school teacher and social workers) used investigative techniques that was so coercive and abusive that [they] would yield false information." (Id. at 64.)

(c) Ms. Wine falsely testified about discovering the note attributed to Marissa and to the facts regarding the SOL testing occurring on May 12, 2004. (Id. at 64-65.)

(d) The Commonwealth Attorney suppressed information pertaining to the "Hostage Negotiators Incident Report, which could have been used at trial to demonstrate ex-wife was conspiring with social workers for arrest purposes." (Id. at 71.)

(e) The testimony admitted at trial from Diane Smith reflecting that Canady admitted to molesting his daughter is false and should be stricken from the record. (Id. at 74.)

(f) In the late 1990s and 2000, the prosecuting attorney provided material support to Annette Canady and encouraged her to seek a divorce. (Id. at 80-81.)

The § 2254 Petition and supporting Memorandum exceed one hundred pages in length. In his § 2254 Petition, Canady references a host of Exhibits. Canady did not submit these exhibits contemporaneous with his § 2254 Petition.

On May 26, 2015, Canady filed Exhibits 1 through 50 which span hundreds of pages. (ECF No. 13.)

On June 18, 2015, Respondent filed his Answer and Motion to Dismiss. (ECF Nos. 15, 16.)

On August 24, 2015, Canady filed his Traverse (ECF No. 23) and his "Points and Authorities in Support of Traverse" (ECF No. 24). In those submissions, Canady realleges the same five grounds for relief raised in his § 2254 Petition. Canady also attached a petition under 28 U.S.C. § 2254 as Exhibit 1 to his "Points and Authorities in Support of Traverse." Canady has not sought to amend his original § 2254 Petition to add any new claims that may lurking in Exhibit 1 and any attempt to do so would be futile, as any new claims would be barred by the statute of limitations.

## II. ANALYSIS

### A. Statute Of Limitations

Section 101 of the Antiterrorism and Effective Death Penalty Act ("AEDPA") amended 28 U.S.C. § 2244 to establish a one-year period of limitation for the filing of a petition for a writ of habeas corpus by a person in custody pursuant to the judgment of a state court. Specifically, 28 U.S.C. § 2244(d) now reads:

> 1. A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
>    (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>    (B) the date on which the impediment to filing an application created by State action in violation of the Constitution

> > or laws of the United States is
> > removed, if the applicant was prevented
> > from filing by such State action;
> >
> > (C) the date on which the constitutional
> > right asserted was initially recognized
> > by the Supreme Court, if the right has
> > been newly recognized by the Supreme
> > Court and made retroactively applicable
> > to cases on collateral review; or
> >
> > (D) the date on which the factual predicate
> > of the claim or claims presented could
> > have been discovered through the
> > exercise of due diligence.
> >
> > 2. The time during which a properly filed
> > application for State post-conviction or other
> > collateral review with respect to the pertinent
> > judgment or claim is pending shall not be counted
> > toward any period of limitation under this
> > subsection.

28 U.S.C. § 2244(d).

### B. Commencement Of The Statute Of Limitations Under 28 U.S.C. § 2244(d)(1)(A)

Canady's judgment became final on Thursday, December 21, 2006, when the time to file a petition for a writ of certiorari expired. Hill v. Braxton, 277 F.3d 701, 704 (4th Cir. 2002) ("[T]he one-year limitation period begins running when direct review of the state conviction is completed or when the time for seeking direct review has expired . . . ." (citing 28 U.S.C. § 2244(d)(1)(A))); see Sup. Ct. R. 13(1) (petition for certiorari should be filed within ninety days of entry of judgment by state court of last resort or of the order denying discretionary review). The limitation period ran for 276 days, until September 24, 2007, when Canady filed his state habeas petition. See 28 U.S.C. § 2244(d)(2). The limitation period

began to run again on October 6, 2008, when the Supreme Court of Virginia dismissed his state habeas petition. The limitation period expired on Monday, January 5, 2009.

Accordingly, the statute of limitations bars Canady's § 2254 Petition unless Canady demonstrates entitlement to a belated commencement of the limitation period or to an equitable exception to the limitation period. As explained below, Canady fails to demonstrate any circumstance that would make his § 2254 Petition timely.

### C. Miscellaneous Arguments As To Why Claims Are Not Barred

Canady suggests his constitutional claims cannot be barred by the statute of limitations because they are simply too substantial and constitute structural errors. (See, e.g., ECF No. 24, at 13 (Claim Three "is not time barred because the trial judge constructively denied Petitioner his Sixth Amendment constitutional right to trial . . . .").) This assertion lacks merit. By its plain terms, the statute of limitations applies to all claims for relief based on a violation of a constitutional right. See In re Johnson, 325 F. App'x 337, 340 (5th Cir. 2009) (rejecting petitioner's assertion that a claim challenging the execution of allegedly mentally retarded individual is exempt from the statute of limitations).

Relatedly, Canady also suggests that because he "is claiming a miscarriage of justice to his conviction overall,"

none of his claims are time-barred. (ECF No. 24, at 18.) In collateral review jurisprudence, for non-capital cases, miscarriage of justice means actual innocence of the crime of conviction. See United States v. Jones, 758 F.3d 579, 585 (4th Cir. 2014). Absent a showing of actual innocence, Canady cannot avoid the statute of limitations simply because he believes some significant legal error occurred. Id. at 584 (alteration in original) (some internal quotation marks omitted) ("The miscarriage of justice exception, we underscore, applies to a severely confined category: cases in which new evidence shows 'it is more likely than not that no reasonable juror would have convicted [the petitioner].'" (quoting McQuiggin v. Perkins, 133 S. Ct. 1924, 1933 (2013))).

### D. Belated Commencement Of The Limitation Period Under 28 U.S.C. § 2244(d)(1)(d)

Under § 2244(d)(1)(D), the limitation period begins to run when the petitioner knows, or through due diligence could have discovered, the factual predicate for a potential claim. See Schlueter v. Varner, 384 F.3d 69, 74 (3d Cir. 2004); Owens v. Boyd, 235 F.3d 356, 359 (7th Cir. 2000). The sprawling nature of Canady's claims and his submissions tend to obscure the central factual bases of Canady's claims. Nevertheless, it is plain that Canady is not entitled to a belated commencement of the limitation period for Claims One through Four, because the factual predicates for each of these claims was discoverable by

Canady through the exercise of due diligence well before the conclusion of his direct appeal or at least his state habeas proceedings. Given the numerous years that have elapsed, Canady fails to coherently explain how § 2244(d)(1)(D) could render Claims One through Four timely.[6]

With respect to Claim Five, Canady insists that this claim, and all of its subparts, are timely because he filed it promptly after he "obtained [documents] through the Virginia Freedom of Information Act (F.O.I.A.) on April 18, 2014, and other relevant evidence obtained through the F.O.I.A., and attorneys at various times after petitioner's state habeas petition was filed." (ECF No. 24, at 21 (citing Exs. 22, 25, 29, 36, 37(a) & (b).) As explained below, these arguments fail to render Claim Five, or any aspect of the § 2254 Petition, timely.

Canady cannot avoid the statute of limitations simply by inundating the Court with paper to support his fanciful theory that his conviction was the product of a vast conspiracy orchestrated by his wife. As reflected above, before he was

---

[6] Canady vaguely suggests that the decision in McQuiggin constitutes a new factual predicate which permits a belated commencement of the limitation period under 28 U.S.C. § 2244(d)(1)(D). (§ 2254 Pet. 14 (citation omitted).) He is wrong. See Whiteside v. United States, 775 F.3d 180, 184 (4th Cir. 2014) (en banc) (some internal quotation marks omitted) ("A decision establishing an abstract proposition of law arguably helpful to the petitioner's claim does not constitute the 'factual predicate' for that claim." (quoting Shannon v. Newland, 410 F.3d 1083, 1089 (9th Cir. 2005))), cert. denied, 135 S. Ct. 2890 (2015).

even sentenced, Canady was advancing the theory that his wife had coerced his daughter into testifying falsely against him. In the years since his conviction, Candy has continued to add an ever growing number of individuals to the conspiracy against him. By the time he filed his state habeas petition, Canady claimed that he was entitled to relief because:

> The prosecutor knew before trial, and suppressed the fact that this is a conspiracy, fraud, a well put together plan started by my wife (Annette E. Canady) and . . . perfected by . . . social workers Diana Smith, Karen Taliferro, school teacher, Lois Wine guidance counselor . . . ."

(ECF No. 18-5, at 10.) Canady also claimed that Smith and Talieferro fabricated the note allegedly found by Wine in order to have a pretext for prosecuting Canady. (Id.)[7] By the conclusion of his state habeas proceedings on October 6, 2008, Canady knew all the facts, or through due diligence could have discovered all the necessary facts, to bring his current claims. Nevertheless, three more years elapsed before Canady pursued any other collateral relief. Given the brevity of the statute of limitations, this extended period of lassitude alone forecloses Canady's ability to utilize § 2244(d)(1)(D) to avoid the statute of limitations bar.

---

[7] On February 29, 2008, while the state habeas petition was pending, the James City County Department of Social Services provided Canady with a copy of the Child Protective Services Investigation record regarding the May 2004 report that Canady was sexually abusing Marissa. (See Exs. 18, 18(A).) Canady relies upon this information to support Claim Five(b).

Canady persists that his § 2254 Petition is timely because he filed within a year of "obtain[ing] the transcripts from the December 9th, 2004 proceeding and a complete accurate report from the 'Williamsburg- James City County Public School[s]" regarding the SOL testing that was conducted on May 12, 2004. (ECF No. 24, at 22.) He is wrong. "Section 2244(d)(1)(D) does not convey a statutory right to an extended delay . . while a habeas petitioner gathers every possible scrap of evidence that might, by negative implication, support his claim." Flanagan v. Johnson, 154 F.3d 196, 199 (5th Cir. 1998).

Canady fails to demonstrate that his lack of access to a complete transcript of his trial warrants a belated commencement of the limitation period.[8]  "[T]here is no requirement that a habeas petitioner enumerate in his petition every fact which supports a ground for relief. Rather, . . . the Rules Governing § 2254 Cases provides that a petitioner need only 'set forth in summary form the facts supporting each of the grounds' specified in the petition." Lloyd v. Van Natta, 296 F.3d 630, 633 (7th Cir. 2002) (citation omitted). Canady fails to demonstrate, as he must, that his lack of access to the transcript of his trial, or any document in the hands of his prior counsel, prevented him

---

[8] In the section addressing Canady's assertion of actual innocence, see infra Part II.E.1, the Court provides some additional discussion of why Canady's receipt, on April 14, 2014, of a response to his Freedom of Information Act request fails to warrant a belated commencement of the limitation period.

15

from setting forth in summary form the facts that support his claims. See Clark v. Oklahoma, 468 F.3d 711, 714 (10th Cir. 2006); Weibly v. Kaiser, 50 F. App'x 399, 403 (10th Cir. 2002) (citation omitted) (holding petitioner's argument "insufficient because he does not allege specific facts that demonstrate how his alleged denial of [legal] materials impeded his ability to file a federal habeas petition"); see United States v. Butler, 178 F. App'x 327, 327 (4th Cir. 2006) (observing that criminal defendants generally can rely upon their own recollection in preparing a collateral attack); cf. Waldron-Ramsey v. Pacholke, 556 F.3d 1008, 1013-14 (9th Cir. 2009) (refusing to equitably toll limitation period where inmate had access to some, but not all of his files and did "not point to specific instances where he needed a particular document [and] could not have kept that document").

### E. Actual Innocence

"Claims of actual innocence, whether presented as freestanding ones, see Herrera v. Collins, 506 U.S. 390, 417 (1993), or merely as gateways to excuse a procedural default, see Schlup v. Delo, 513 U.S. 298, 317 (1995), should not be granted casually." Wilson v. Greene, 155 F.3d 396, 404 (4th Cir. 1998) (parallel citations omitted). Here, the Court reviews Canady's assertion of innocence under the more lenient standard for gateway claims because Canady's actual innocence

claim would allow the Court to consider his otherwise time-barred claims.   McQuiggin v. Perkins, 133 S. Ct. 1924, 1928 (2013).

A gateway claim requires "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." Schlup, 513 U.S. at 324. "Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful." Id.

If a petitioner meets the burden of producing new, truly reliable evidence of his innocence, the Court then considers "'all the evidence,' old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under 'rules of admissibility that would govern at trial'" and determines whether the petitioner has met the standard for a gateway claim of innocence. House v. Bell, 547 U.S. 518, 538 (2006) (quoting Schlup, 513 U.S. at 327-28). The Court must determine "whether 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" Sharpe v. Bell, 593 F.3d 372, 377 (4th Cir. 2010) (quoting Schlup, 513 U.S. at 327-28).

"The Court need not proceed to this second step of the inquiry unless the petitioner first supports his or her claim with evidence of the requisite quality." Hill v. Johnson,

No. 3:09cv659, 2010 WL 5476755, at *5 (E.D. Va. Dec. 30, 2010) (citing <u>Weeks v. Bowersox</u>, 119 F.3d 1342, 1352-53 (8th Cir. 1997); <u>Feaster v. Beshears</u>, 56 F. Supp. 2d 600, 610 (D. Md. 1999)).

In support of his claim of innocence, Canady has submitted a horde of documents. These documents include, <u>inter</u> <u>alia</u>: school records which Canady suggests impeach Lois Wine's testimony; affidavits from his sons; a copy of the Child Protective Services Investigation record regarding the May 2004 report that Canady was sexually abusing Marissa; Canady's allegations that Dr. Clayton was biased in favor of Canady's wife because Dr. Clayton worked at a hospital where Canady's wife used to work;[9] and a slew of other documents with little to no probative value of Canady's innocence. None of the evidence tendered by Canady constitutes new reliable evidence of his innocence. See <u>Schlup</u>, 513 U.S. at 324.[10] Rather, as explained

---

[9] Canady has not tendered any scientific or medical evidence that refutes Dr. Clayton's testimony that Marissa had sustained injuries to her hymen that were consistent with sexual penetration.

[10] Canady also swore under penalty of perjury to the entirety of his "Points and Authorities in Support of Traverse." (ECF No. 24, at 45.) Canady's declaration of his innocence fails to constitute reliable evidence of his innocence. Canady's declaration of his innocence is not "trustworthy" and does not constitute "reliable" evidence of innocence sufficient to support a claim of actual innocence. <u>Schulp</u>, 513 U.S. at 324. "To accept such commonplace declarations would ignore the Supreme Court's admonition that the quality of evidence necessary to support a claim of actual innocence 'is obviously

below, Canady has produced specious allegations and unconvincing proof in support of his story that he was framed.

### 1.   School Records

For example, Canady now claims Ms. Wine "concocted" the story of SOL testing on May 12, 2004 and some third party constructed the note attributed to Marissa in order fabricate probable cause for his arrest.  (ECF No. 24, at 22-23.)   In support of this assertion, Canady notes that "[n]ewly discovered evidence show[s] that NO FOURTH GRADE S.O.L. MAKE UP TEST[S] WERE ADMINISTERED TO FOURTH GRADE STUDENTS on 5-12-04 . . . ." (Id. at 23.)   Canady directs the Court to information he obtained in response to a Freedom of Information Act request in 2014 to support his assertion that Ms. Wine lied about the SOL testing occurring on May 12, 2004.    (Id. citing Ex. 25.) Canady's new evidence, however, corroborates, rather than refutes Ms. Wine's testimony.

Contrary to Canady's twisted revision of her testimony, Ms. Wine did not state that on May 12, 2004 the school was administering "FOURTH GRADE S.O.L. MAKE UP TEST[S]" to fourth graders.  (ECF No. 24, at 23.)   Rather, Ms. Wine testified that, on May 12, 2004, the school was conducting testing of "any fourth graders that had not passed the language arts or math

---

unavailable in the vast majority of cases.'"   Carter v. Commonwealth of Va., No. 3:09CV121-HEH, 2010 WL 331758, at *6 (E.D. Va. Jan. 26, 2010) (quoting Schlup, 513 U.S. at 324).

section of the third-grade" standard of learning test. (Dec. 13, 2004 Tr. 21-23.) Canady's new evidence confirms that on May 12, 2004, the school was administering the third grade SOL test for reading. (Ex. 25, at 3.) Thus, Canady's new evidence neither supports a claim of innocence nor indicates that Ms. Wine testified falsely. Furthermore, because Canady has not discovered any new facts about when the SOL testing was conducted, the information in Exhibit 25 fails to provide a basis for a belated commencement of the limitation period under 28 U.S.C. § 2244(d)(1)(D).

### 2. Affidavits From Darius And James Canady

Canady also has tendered a series of affidavits from his sons, Darius and James Canady. (Exs. 37, 37(a), 37(b), 37(c).) Much of the affidavits are devoted to recounting the circumstances surrounding Canady's arrest on May 12, 2004 and are largely irrelevant to the issue of his innocence.

In the affidavit executed on June 25, 2010, James and Darius, however, swear that it was impossible for any sexual abuse to have occurred in the living room between February and June of 2001 because the first floor of the house was a wreck and the flooring had been removed for a portion of that time. (Ex. 37, at 4.) Darius further swears that during a conversation he had with Marissa "before she died, I asked her did she write [the note found by Ms. Wine], and Marissa said no.

She never told me who did." (Id. at 6.) Darius then recites that his father told him that his convictions flowed from someone's "pre-arranged plan. I don't know all of the details, but I will testify that something funny is going on." (Id.)

In an affidavit executed four years later, on February 14, 2015, Darius then supplies the details. (See Ex. 37(A), at 3.) Darius now asserts "Marissa did claim that our mother Annette E. Scott influenced, and pushed her into making false sexual allegations against our father." (Id. at 1.) Darius claims that he did not share this information earlier because he feared that his mother would be arrested and sent to jail. (Id.) Darius indicates he feels free to share the information now because he realizes his mother would only receive a fine. (Id.)

At best, the foregoing affidavits tend to impeach Marissa's trial testimony, rather than directly exculpate Canady. Moreover, the timing and content of these affidavits significantly undercuts any value for impeachment. See Schlup, 513 U.S. at 332 ("[T]he court may consider how the timing of the submission and the likely credibility of the affiants bear on the probable reliability of that evidence.") Darius waited until years after the trial and years after Marissa's death to come forward with any statement indicating Marissa lied about being the author of the note found by Ms. Wine. Darius then waited four more years to supply further second-hand information

suggesting that Canady's wife pressured Marissa to testify falsely about the sexual abuse.

Rather than the honest admissions of reliable witnesses, the affidavits appear to be the product of a father's emotional pressure upon his children to supply him with testimony that would support his tale that he was framed. Even the most credulous of jurors would not believe Canady's wife was capable of maneuvering her daughter, teachers, a social worker, and a doctor into framing him on a trumped up sexual abuse charge. Moreover, Canady's own evidence indicates that his wife did not need to fabricate any crime in order to have him prosecuted and put in jail.[11] Canady's wife simply could have reported him to the police for his constant use of illegal drugs. The affidavits of Darius and James Canady fail to constitute reliable evidence of Canady's innocence.

### 3. Child Protective Services Investigation Record

Canady believes that the Child Protective Service Investigation Record ("CPS Record") (Exs. 18(A), 22) somehow provides compelling evidence of his innocence because it has some allegedly inconsistent information about the exact

---

[11] At the time of his arrest, Canady was on probation for suspended sentences for destruction of property and burglary. Both Darius and James readily admit that Canady smoked prodigious amounts of crack in days preceding his arrest. (See Ex. 37, at 1.)

circumstances that led to his arrest[12] and it reveals that
Marissa initially was reluctant to admit the extent of abuse she
suffered at the hands of her father. Contrary to Canady's
suggestion, the CPS Record largely corroborates Marissa's
account of abuse and provides further compelling evidence of
Canady's guilt.

### 4. Analysis

Canady has failed to produce any new reliable evidence of
his innocence. See Calderon v. Thompson, 523 U.S. 538, 559
(1998) (emphasizing that new reliable evidence of innocence is a
"rarity"). Thus, no need exists to proceed to the second step
of the inquiry and consider all of the evidence. Hill, 2010 WL
5476755, at *5 (citing Weeks, 119 F.3d 1342, 1352-53 (8th Cir.
1997); Feaster, 56 F. Supp. 2d at 610). Nevertheless,
considering all the evidence, Canady fails to demonstrates that
"'it is more likely than not that no reasonable juror would have
found petitioner guilty beyond a reasonable doubt.'" Sharpe,
593 F.3d at 377 (quoting Schlup, 513 U.S. at 327-28).

The evidence continues to convincingly demonstrate Canady's
guilt. The Circuit Court observed that Marissa "was one of the

---

[12] At the time of his arrest, it was reported to the police
that Canady was barricaded in his home and possibly suicidal.
(See Ex. 29.) Canady suggests this information was false and
must have been fed to the police as part of the conspiracy to
have him falsely arrested for sexual abuse. As noted above, no
such conspiracy existed. Moreover, Canady in no way advances
his claim of innocence by providing irrelevant details regarding
the circumstances of his arrest.

most credible witnesses for her age that the I ha[ve] heard in 19 years." (Sept. 6, 2005 Tr. 16.)   That assessment is entitled to significant weight in the present analysis. See Sharpe, 593 F.3d at 378-79.   Marissa's compelling testimony regarding her abuse was corroborated by Dr. Clayton's testimony regarding the damage to Marissa's hymen and Canady's admission to abusing Marissa.   Canady's evidence in support of a fanciful theory of a conspiracy to have him falsely arrested in no way undermines the overwhelming evidence of his guilt.

### III. CONCLUSION

Accordingly, Respondent's Motion to Dismiss (ECF No. 16) will be granted.   The § 2254 Petition will be denied and the action will be dismissed.   A certificate of appealability will be denied.

The Clerk of the Court is directed to send a copy of this Memorandum Opinion to Canady and counsel of record.

It is so ORDERED.

/s/   R E P

Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: November 20, 2015